Kenneth Lee CROW, Plaintiff,

v.

McELROY COAL COMPANY,
Defendant.

No. CIV.A.5:02 CV 52.

United States District Court,
N.D. West Virginia.

June 24, 2003.

Kenneth Lee Crow, Moundsville, WV, for Kenneth Lee Crow, plaintiff.

## MEMORANDUM OPINION AND ORDER ADOPTING AND AFFIRMING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE AND DISMISSING COMPLAINT WITH PREJUDICE

STAMP, District Judge.

### I. *Background*

On April 24, 2002, *pro se* plaintiff, Kenneth Lee Crow ("Crow") filed a complaint against McElroy Coal Company alleging employment discrimination and seeking monetary damages. This Court referred this action to United States Magistrate Judge James E. Seibert pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), authorizing him to rule upon any nondispositive motions and to recommend disposition of any dispositive motions. On June 4, 2002, the magistrate judge entered a report recommending that Crow's complaint be dismissed with prejudice for failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted.

On June 14, 2002, Crow filed an objection to the report and recommendation stating that he had exhausted administrative remedies. On the same date, Crow filed an amended complaint. The amended complaint was referred to the magistrate judge pursuant to U.S.C. §§ 636(b)(1)(A) and (B) for report and recommendation. On March 7, 2003, United States Magistrate Judge Seibert entered a report recommending that Crow's complaint be dismissed with prejudice for failure to state a claim. On March 17, 2003, Crow filed objections to the magistrate judge's report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the district court must conduct a *de novo* review of any portion of the magistrate judge's recommendation to which objection is made. As to those portions of the rec-

ommendation to which no objection is made, the magistrate judge's finding and recommendation will be upheld, unless they are "clearly erroneous." Since Crow has not objected to the proposed recommendation that he has failed to state a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* this Court reviews that portion of the magistrate judge's recommendation for clear error. However, since Crow has made objections to the recommendation that he has failed to state a claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.,* this Court reviews that portion of the recommendation *de novo.*

## II. *Applicable Law*

■ Initially, this Court notes that a *pro se* plaintiff is given wide latitude in framing a complaint. Such a *pro se* complaint must be liberally construed in favor of the plaintiff and held to a "less stringent standard than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, this standard does not relieve a *pro se* plaintiff of his obligations under the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure provide that a claim for relief "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claims showing that the pleader is entitled to relief and (3) a demand for judgment for the relief the pleader seeks." Fed. R.Civ.P. 8(a).

### A. *Title VII Claim*

Pursuant to Title VII, it is an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (2003).

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court allocated the burdens of proof for a Title VII claim. Plaintiff initially bears the burden of establishing a *prima facie* case of discrimination which "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff must show that he is a member of a protected class; that the employer made an adverse decision concerning him and that but for the plaintiff's protected status, the adverse decision would not have been made. *McDonald v. Sante Fe Trail Transp. Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

### B. *ADA Claim*

■ The ADA prohibits a covered employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish an wrongful discharge claim under the ADA, the plaintiff has the burden of proving that: (1) he has a disability; (2) he is otherwise qualified for the job in question; and (3) he was discharged because of his disability. *See id.; Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995).

■ To meet the first requirement of the ADA, plaintiff must prove that he has a disability which is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Under the second requirement, plaintiff must prove that he is a "qualified individual with a disability" which is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Tyndall v. National Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir.1994). Further, a plaintiff's receiving of Social Security Disability Insurance ("SSDI") payments does not automatically preclude the plaintiff from being considered a qualified individual with a disability under the ADA. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (holding that SSDI and ADA claims may be consistent with each other). However, the plaintiff must proffer an explanation "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of [his] job, with or without reasonable accommodation." *Id.* at 806, 119 S.Ct. 1597.

■ For a "failure to accommodate" claim under the ADA, a plaintiff must prove: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations." *Rhoads v. Federal Deposit Ins.*, 257 F.3d 373, 387 n. 11 (4th Cir.2001), *cert. denied*, 535 U.S. 933, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002).

## III. *Discussion*

### A. *Title VII Claim*

■ Crow has alleged that he was discriminated against because of his disability. Since disability is not a protected class under Title VII, the magistrate judge found that Crow failed to state a claim to which relief can be granted. This Court finds that the proposed findings regarding his Title VII are not clearly erroneous.

### B. *ADA Claim*

In Crow's objections to the magistrate judge's report and recommendation, Crow attached his 1994 psychological evaluation as proof of his disability. Crow bears the burden of not only proving that he has a disability, but that he is a "qualified individual with disability" under the ADA. *See Cleveland*, 526 U.S. at 806, 119 S.Ct. 1597.

■ Crow claims that because his doctor, Rick A. Greco, released him to work in a letter dated June 1, 1994, that he is an otherwise qualified individual with a disability. However, Crow has not shown that he is a qualified individual with a disability at the time of termination. Crow was terminated from his employment at McElroy Coal Company on February 13, 2001. On that same date, Dr. Greco stated to Thomas Coram, Superintendent of McElroy Coal Company, that he had not cleared Crow to work in an underground coal mine. This conversation was confirmed in a June 28, 2001 letter signed by Dr. Greco to John Mayer, Supervisor of Human Resources at McElroy Coal Company.[1] Because Crow failed to obtain a release to work from his doctor, Crow has not shown that he can perform the essential functions of the job with or without reasonable accommodation. *See*

---

**1.** The June 28, 2001 letter is one of several attachments to Plaintiff's Amended Complaint.

42 U.S.C. 12111(8). Therefore, he has not met his burden of showing that he is qualified individual with a disability. *See also Gower v. Wrenn Handling,* 892 F.Supp. 724, 727 (M.D.N.C.1995) (plaintiff was not qualified individual person with a disability when doctor failed to issue a release so that plaintiff could return to work).

 Furthermore, because he is receiving SSDI benefits, he must also proffer a sufficient explanation to support a finding that assuming the truth of the SSDI claim, he is a qualified individual with a disability within the meaning of the ADA. *See Cleveland,* 526 U.S. at 807, 119 S.Ct. 1597. Crow has not proffered any explanation for the apparent contradiction between his SSDI claim and his ADA claim.

In addition, Crow has failed to state a claim for "failure to accommodate" under the ADA. In a letter dated March 28, 2001 which is addressed to Crow, Dr. Greco writes, "I will recommend that you can return to work, but that your employer must carefully evaluate the work setting and provide a period of supervision and instruction consistent with the dangers and duties of the work environment." [2] This letter was received by McElroy Coal Company on August 13, 2001, seven months after Crow had already been terminated and over four months after it was written by Dr. Greco.[3]

 The burden of requesting the accommodation is on the employee. *Gantt v. Wilson Sporting Goods,* 143 F.3d 1042, 1046 (6th Cir.1998). Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected. *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995); *see also Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731, 736 (5th Cir.1999) (noting that "courts have held that an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal interactive process' is traceable to the employee and not the employer"). Crow did not request accommodation at the time of his termination, nor did he request accommodation in a timely manner after receiving the March 28, 2001 letter from Dr. Greco. Thus, this Court finds that Crow has not stated a claim for failure to accommodate.

Upon *de novo* review of Crow's ADA claim, this Court finds that he has failed to state a claim showing that he is entitled to relief.

### IV. *Conclusion*

For the reasons stated above, this Court ACCEPTS and ADOPTS the magistrate judge's report and recommendation that Crow's complaint be DISMISSED WITH PREJUDICE. Accordingly, this civil action is DISMISSED and STRICKEN from the active docket of this Court.

Plaintiff, who is proceeding *pro se,* is advised that he has the right to appeal the judgment of this Court with respect to his ADA claim to the Fourth Circuit Court of Appeals. Notice of such an appeal must be filed with the Clerk of Court within thirty days after the date of the entry of this order. However, under *Wright v. Collins,* 766 F.2d 841, 845 (4th Cir.1985), the plaintiff's failure to object to the magistrate judge's proposed findings and recommendation with respect to his Title VII claim bars the plaintiff from appealing the judgment of this Court that addresses his Title VII claim.

IT IS SO ORDERED.

The Clerk is directed to transmit copies of this order to counsel of record herein.

---

**2.** Attachment to Pl.'s Am. Compl.

**3.** Attachment to Pl.'s Amend. Compl.

## REPORT AND RECOMMENDATION

SEIBERT, United States Magistrate Judge.

### I. PROCEDURAL HISTORY

On April 24, 2002, the plaintiff, Kenneth Lee Crow ["Crow"], filed a *pro se* complaint against McElroy Coal Company alleging employment discrimination and seeking monetary damages.

By Report and Recommendation entered on June 4, 2002, I recommended that the complaint be dismissed for failure to exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission ["EEOC"] and for failing to state a claim.

On June 14, 2002, Crow filed objections to the Report and Recommendation wherein he asserted he had filed a charge with the EEOC.[1] On the same date, Crow filed an amended complaint and provided the Court with information from the proceedings before the EEOC. Crow also asserted he was bringing his claim under Title VII and the Americans with Disabilities Act ["ADA"]. By order entered on August 21, 2002, the Honorable Frederick P. Stamp, Jr., referred the amended complaint to me for report and recommendation.

### II. FACTS

Crow asserts that on or about January 18, 2001, he received a letter from John S. Mayer, Jr., supervisor of Human Resources of McElroy Coal Company, advising him he was being considered for recall employment as a general laborer at the McElroy mine.[2] Mayer advised Crow that he would need to take a physical. According to Crow, he went to Wheeling Hospital for his physical and advised the physician that he had viral encephalitis in the past and had been in a coma for 8 days. He further advised the physician that he wanted to work in a coal mine. Thereafter, on or about February 7, 2001, Mayer telephoned Crow and advised him he could begin working the next day. Thus, Crow terminated his employment with Coronet Foods and reported to work at McElroy Coal.

After Crow began working for McElroy Coal, Thomas Coram, Superintendent, was advised that Crow was "experiencing difficulties underground and was causing concern for the foremen to which he had been assigned. The foremen feared that Mr. Crow would suffer an injury because he seemed disoriented and confused while he was in the coal mine." (Pl.'s Resp. to Def.'s EEOC Compl.) McElroy Coal also noted that Crow had suffered a severe electrical shock in 1992, and after the 1992 accident, Crow contracted spinal meningitis[3] and was in a coma for eight days. (*Id.*) Additionally, Crow advised Coram and Mayer that he had been receiving Social Security Disability Insurance ["SSDI"] benefits since suffering from meningitis. (*Id.*) Subsequently, Coram and Mayer contacted Crow's physician, Dr. Greco, and were advised that he had not released Crow from his care to work in an underground coal mine.[4] (*Id.*)

---

1. On March 14, 2002, the EEOC dismissed Crow's charge and notified him of his right to sue.

2. Crow was laid of from the Powhatan # 4 Mine on September 20, 1981, and had not worked for any mine since that time. However, at some point, he began working for Coronet Foods.

3. While McElroy Coal indicates Crow had spinal meningitis, Crow states he had viral encephalitis. Crow also indicates he lost no time from work as a result of the electrical shock.

4. Dr. Greco confirmed this conversation with a letter dated June 28, 2001 to Mayer in which he indicated he had not released Crow to work in an underground coal mine.

On February 13, 2001, Mayer advised Crow that he could not work for McElroy if he was collecting disability. Crow was also advised not to return to work until he obtained his miner certificate and a release to return to work.[5]

Crow was then advised by letter dated February 14, 2001 as follows:

On February 13, 2001, we became aware of the facts that you did not possess a West Virginia Miner's Card, that you had not been released from the care of your personal physician and are unable to work in an underground coal mine as a result of medical problems that you have experienced in the past. As a result of the discovery of these facts, your recall on February 8, 2001, was in error. We are unable to permit you to continue your employment at the McElroy Mine at this time and your name will be returned to the panel list with the notation of inactive due to the above issues.

(*Id.*)

Crow asserts in his complaint that he worked alone so no one could indicate he was disoriented and confused. He also relies on a March 28, 2001 letter from Dr. Greco in which Dr. Greco advised Crow that he was in very good physical shape and "physically capable of any form of work." However, Dr. Greco expressed concern "about the level of supervision provided for you in the coal mine." Dr. Greco indicated he would recommend that Crow return to work but that his employer carefully "evaluate the work setting and provide a period of supervision and instruction consistent with the dangers and duties of the work environment."[6] Crow also included with his amended complaint, the June 30, 2001, statement of Bernard Miller, belt foreman, in which he stated that Crow worked with him on the belt but had trouble keeping his balance when walking and did not understand or grasp what was going on or what they were doing.

Having screened Crow's complaint and amended complaint in accordance with the standing order of this Court and in accordance with the provisions of 28 U.S.C. § 1915(e)(2)[7], I find that Crow is not entitled to the relief he requests and recommend that his complaint and amended complaint be dismissed with prejudice.

## III. ANALYSIS

### A. ADA Claim.

To establish an ADA violation, the plaintiff must prove that (1) he has a disability; (2) he is otherwise qualified for the job in question; and (3) he was discharged solely because of his disability. *See Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir.1995). The ADA defines "disability" as

(A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with

---

**5.** Crow obtained his miner's certificate.

**6.** Mayer advised the EEOC that the March 28, 2001 letter was not received by McElroy Coal until August 30, 2001.

**7.** 28 U.S.C. § 1915(e)(2)(B) states: Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... (B) the action or appeal-

(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.

or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Tyndall v. National Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir.1994).

The mere fact that Crow is receiving SSDI does not prevent him from being considered a qualified individual. In an ADA case in which the plaintiff had received Social Security Disability Insurance (SSDI), the United States Supreme Court held that "despite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should apply a special negative presumption" because the ADA considers reasonable accommodation, whereas the Social Security Act does not. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 800–03, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *see also Fox v. General Motors Corporation*, 247 F.3d 169 (4th Cir.2001). However, "[a]n ADA plaintiff bears the burden of proving that [he] is a 'qualified individual with a disability'-that is, a person, 'who, with or without reasonable accommodation', can perform the essential functions of [his] job." *Cleveland*, 526 U.S. at 806, 119 S.Ct. 1597. The "ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather [he] must proffer a sufficient explanation." *Id.* "[T]hat explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of [his] job, with or without reasonable accommodation." *Id.* at 807, 119 S.Ct. 1597.

Crow has offered no explanation as to why he is entitled to SSDI and is also a qualified individual with a disability entitled to bring a claim under the ADA. Instead, he only asserts that another miner who is receiving SSDI is also working for McElroy. However, Crow does not address his own situation.

Moreover, Crow has not demonstrated he was a qualified individual because his doctor had not released him to work when the termination occurred. *See May v. Roadway Express, Inc.*, 221 F.Supp.2d 623 (D.Md.2002)(individual who submitted certificates from his physician declaring that he was not fit for duty was not an otherwise qualified individual with a disability); *see also Gantt v. Wilson Sporting Goods Company*, 143 F.3d 1042, 1047 (6th Cir.1998)(employee is not qualified to perform the essential functions of the job because she was not released by her doctor to return to work).

Consequently, I recommend that Crow's complaint under the ADA be dismissed for failure to state a claim.

### B. Title VII Claim.

Title VII makes it an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Crow only alleges his employer discriminated against him because of his disability. Disability is not a protected class under Title VII. Thus, Crow has failed to state a claim under Title VII.

### IV. RECOMMENDATION

In consideration of the foregoing, it is my recommendation that Crow's complaint be **DISMISSED WITH PREJUDICE** and removed from the docket.

Any party may file within ten (10) days of the date of this Recommendation, with the Clerk of the Court, written objections

identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.[8]

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to all parties appearing herein.

March 7, 2003.

**8.** 28 U.S.C. § 636(b)(1); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir.1985); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).